UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
COREY SINGELTON,

                Plaintiff,                              COMPLAINT AND
                                                                         JURY TRIAL DEMAND

    v.

THE CHEESECAKE FACTORY RESTAURANTS,
INC., KATHERINE WRIGHT, Individually and in Her
Official Capacity, JONATHAN JACOBS, *a.k.a.* JP,
Individually and in his Official Capacity,

                Defendants.
------------------------------------------------------------X

        Plaintiff COREY SINGLETON, by his attorneys, COHEN & FITCH LLP, complaining of the defendants, respectfully allege as follows:

## INTRODUCTION

        1.      This is an action seeking monetary relief (including past and ongoing economic loss), compensatory and punitive damages, disbursements, costs, and fees, for violations of plaintiff's rights brought pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), New York Executive Law § 296, the New York State Human Rights Law, Executive Law § 290 *et seq.* ("Human Rights Law" or "NYSHRL"); and the Administrative Code of the City of New York § 8-101 *et seq.* ("City Law" or "NYCHRL"), intentional infliction of emotional distress, and negligent infliction of emotional distress.

        2.      Plaintiff alleges that defendant wantonly, reckless, negligently, knowingly, and purposefully sought to and did deprive plaintiff of his employment, position, title, and pay through acts of harassment, discrimination, retaliation, and abuse.

        3.      Plaintiff alleges that defendant intentionally and purposefully discriminated against plaintiff based on his race, national origin, and religion, and that defendant inflicted emotional

distress upon plaintiff, intentionally and/or negligently.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1334.

5. Jurisdiction also arises under 28 U.S.C. § 1332 as the matter in controversy exceeds the sum specified by 28 U.S.C. § 1332 and the plaintiff in this matter is completely diverse in citizenship than all named defendants pursuant to 28 U.S.C. § 1332(a)(1), as the plaintiff is a citizen of a different state than all named defendants.

6. This Court is requested to exercise pendent jurisdiction with respect to plaintiff's New York State law claims pursuant to 28 U.S.C. § 1367.

7. Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391 because this is the place where the unlawful employment practices occurred.

8. On September 29, 2020, the Equal Employment Opportunity Commission issued a Notice of Right to Sue. Plaintiff received the Notice of Right to sue within 90 days of filing this Complaint.

9. Plaintiff will serve a copy of the complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York upon filing in accordance with N.Y.C. Admin. Code § 8-502(c).

## PARTIES

*Plaintiff*

10. Plaintiff Corey Singleton is an African American male. He currently resides in Lexington, North Carolina, and was employed by defendant The Cheesecake Factory Restaurants, Inc. ("The Cheescake Factory"), from August 2018 to January 2019.

11. At all times relevant to this complaint, Mr. Singleton was a sauté chef for the

defendant, The Cheesecake Factory, at one of their restaurants, located at 90-15 Queens Blvd., Queens, NY 11373.

12. Mr. Singleton was at all times an "individual" within the meaning of the Human Rights Law, protected from discrimination on the basis of race.

13. Mr. Singleton was at all times a "person" within the meaning of the City Law, protected from discrimination on the basis of race.

*Defendants*

14. Defendant The Cheesecake Factory is a publicly-traded corporation duly, upon information and belief, organized and existing under and by virtue of the laws of the State of California and/or Delaware.

15. At all relevant times, The Cheesecake Factory operated a retail restaurant chain with locations throughout the United States and employed more than one hundred (100) employees.

16. At all relevant times, Defendant WRIGHT was the Assistant General Manager of The Cheesecake Factory located 90-15 Queens Blvd., Queens, NY 11373.

17. At all times relevant to this Complaint, defendant WRIGHT was one of Mr. Singleton's supervisors.

18. At all times relevant to this Complaint, defendant JACOBS was Mr. Singleton's direct supervisor.

19. Each and all of the acts of the individually named defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant The Cheesecake Factory.

20. Each and all of the acts of the defendants alleged herein were done by said

defendants while acting in furtherance of their employment by defendant The Cheesecake Factory.

21. At all relevant times, defendants controlled the terms and conditions of plaintiff's employment and was and is an "employer" within the meaning of the NYSHRL, NYCHRL, and the aforementioned Federal Laws.

## FACTUAL ALLEGATIONS

22. Plaintiff was hired by defendant The Cheesecake Factory on August 2018 to work at the 90-15 Queens Blvd., Queens, NY, 11373 location.

23. Upon hiring, plaintiff was assigned to work as a cook in the kitchen. He earned approximately $15.00 per hour.

24. Throughout plaintiff's employment by defendant The Cheesecake Factory, plaintiff's supervisors, defendants Kathrine WRIGHT and JACOBS, both of whom are white, frequently and consistently, discriminated against, abused, threatened, and intimidated several of the other minority (mainly Black and Hispanic) employees who worked at The Cheesecake Factory.

25. Specifically, plaintiff overheard defendants WRIGHT and JACOBS make comments on several occasions intimating Black people are always late and lazy.

26. Plaintiff also routinely overheard defendants WRIGHT and JACOBS ridicule Hispanic employees who did not speak English fluently.

27. During this time, plaintiff's work environment became hostile as it was riddled with animus toward him and other minorities on the basis of his race.

28. Defendants WRIGHT and JACOBS caused plaintiff to fear for his physical and emotional well-being with such offensive remarks.

29. Despite being upset by the comments he heard from these supervisors on a regular

basis, plaintiff continued to go to work without issue.

30. However, on January 18, 2019, this racial animus was then directed squarely at Mr. Singleton.

31. On January 18, 2019, Mr. Singleton was scheduled to work at 5:00 p.m.

32. At the time Mr. Singleton lived in the Bronx, and usually took public transportation to get to work.

33. Plaintiff's commute could sometimes take up to two (2) hours.

34. Despite the long commute and the reliance on public transportation, plaintiff was quite diligent about being on time and would let his supervisors know if he was running late.

35. Plaintiff had never been reprimanded or disciplined for tardiness or any other reason during his employment with The Cheesecake Factory.

36. On January 18, 2019, Mr. Singleton had an appointment earlier in the day and believed he was going to be running late, so he texted defendant WRIGHT to let her know.

37. Defendant WRIGHT did not indicate that she had any issue with plaintiff being late, nor did she tell him that he should not bother coming in, in response to his text.

38. When plaintiff arrived to work at approximately 5:40 p.m. that evening, he clocked in and went straight to the kitchen where he started to work.

39. Shortly thereafter, defendant JACOBS pulled plaintiff to the side and brought him to an office, where defendant WRIGHT follows them in.

40. In the office, defendants JACOBS and WRIGHT told plaintiff that they got someone to fill his spot for the evening because he was late, so he had to go home.

41. Defendant JACOBS, however, told plaintiff because he had traveled a long way to get to work, if one of the workers were willing to leave, plaintiff could stay and work in their stead.

5

42. Plaintiff understood and then went back to the kitchen to ask one of his colleagues if they were willing to leave early.

43. When plaintiff went back to the kitchen to ask one of the other employees to leave, he learned that none of them were called in to replace him for the shift.

44. In fact, all the workers there, including plaintiff, had been previously scheduled for the shift.

45. Unbeknownst to plaintiff, defendants WRIGHT and JACOBS had actually overloaded the schedule in anticipation someone would call out sick, but all of the scheduled employees had come to work that day.

46. Thus, plaintiff realized that defendants WRIGHT and JACOBS had lied to him about having to call someone in to take his place because he was late.

47. Nonetheless, one of the employees, Michael Scott ("Mike"), agreed to leave so that plaintiff could work.

48. Thereafter, defendant JACOBS came back into the kitchen.

49. Plaintiff confronted defendant JACOBS about why he falsely claimed to have called someone in to cover plaintiff's shift.

50. Defendant JACOBS looked at plaintiff with a guilty blank stare on his face and ordered plaintiff to go back into the office with him and defendant WRIGHT.

51. In the office, defendants WRIGHT and JACOBS continued to lie about having called someone in, when in fact no one had been called in to replace plaintiff.

52. Defendants WRIGHT and JACOBS refused to admit that they had simply over scheduled the shift in anticipation of call-outs.

53. Nevertheless, plaintiff informed defendants WRIGHT and JACOBS that Mike had

agreed to leave.

54. Defendant JACOBS refused to believe that Mike agreed to leave.

55. As such, plaintiff went back to the kitchen to get Mike and see if anyone else would agree to go.

56. When plaintiff got to the kitchen, several of the employees were on break and the food orders were still coming in, so he started to get them ready as he waited for the others to come back.

57. Upon seeing plaintiff working again, defendant JACOBS approached plaintiff, raised his voice, and started cursing at him.

58. Defendant JACOBS ordered plaintiff to clock out immediately.

59. In response, plaintiff asked, "why do I have to clock out if Mike agreed to leave in order for me to stay?"

60. As the scene unfolded, another employee, Courtney (last name unknown), offered to leave as well.

61. In response, defendant JACOBS angrily snapped at Courtney and told him to mind his own business.

62. Defendant JACOBS again ordered plaintiff back into the room where defendant WRIGHT joined them.

63. Upon entering the room defendant WRIGHT angrily stated "Corey you're still here," to which plaintiff responded, "why wouldn't I be here, I close sauté?"

64. Then, defendant WRIGHT retorted, "I don't know, it's Friday. I figured a ghetto urban kid would have something fun to do in the hood being that he didn't have to work."

65. Upon hearing this racist remark, plaintiff immediately asked for a frontline staff

7

member to be present to witness the explicit discrimination.

66. Plaintiff also requested to record the conversation with his phone but defendant WRIGHT angrily denied his requests and said "that's not how it works."

67. Defendant WRIGHT then ordered plaintiff to leave and began to lecture him.

68. As plaintiff began to walk out to leave, defendant WRIGHT angrily yelled "don't you leave BOY," to express that he was not dismissed.

69. The use of "BOY" to refer to African American men has long been deemed to be an explicit racist comment.

70. Upon hearing this comment, plaintiff could no longer bear what was happening and went to exit through the door.

71. While plaintiff was in the doorway, defendant JACOBS intentionally slammed the door right into plaintiff's shoulder.

72. This incident was extremely traumatizing to plaintiff.

73. Plaintiff reported the assault to the police and eventually went home that evening.

74. Several days later, plaintiff was informed by The Cheesecake Factory that he was terminated for misconduct.

75. Defendant The Cheesecake Factory condoned the bias-related and violent conduct of defendants JACOBS and WRIGHT. Rather than take disciplinary action against defendants JACOBS and WRIGHT, who wrongfully abused and battered plaintiff because of his race, defendant The Cheesecake Factory, terminated plaintiff.

76. Defendants engaged in unlawful discriminatory and abusive practices against plaintiff because of plaintiff's race, in violation of Federal and New York State and City statutes.

77. As a result, plaintiff suffered lost wages, embarrassment, humiliation, and physical

injuries, resulting in permanent emotional strain and distress.

## COUNT ONE: VIOLATION OF 42 U.S.C. § 1981

78. Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

79. Plaintiff is an African American male.

80. Defendants purposely discriminated against plaintiff on the basis of his race in that he was repeatedly humiliated by the use of racial epithets, assaulted, battered, and ultimately prevented from performing services under his employment contract.

81. Defendants' discrimination based on plaintiff's race was intentional and was the substantial and/or motivating factor in interfering with plaintiff's employment.

82. As a result of the foregoing, plaintiff Corey Singleton sustained, *inter alia*, physical injury, mental anguish, shock, fright, apprehension, embarrassment, humiliation, lost wages, interference with his employment, loss of liberty, and deprivation of his constitutional rights.

## COUNT TWO: VIOLATION OF TITLE VII, 42 U.S.C. § 2000e

83. Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

84. Defendants discriminated against plaintiff based on plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

85. Plaintiff is an African American male. As such, he belongs to protected classes.

86. As alleged herein, plaintiff was subjected to disparate treatment in the form of threats, assault, harassment, and intimidation by defendants, its agents, and employees, including defendants WRIGHT and JACOBS.

87. Defendants subjected plaintiff to a hostile work environment by failing and/or

refusing to provide a safe environment and to employ procedures to prevent and deal with the discriminatory, disparate, and abusive threats, harassment, and intimidation by its employees, defendants WRIGHT and JACOBS.

88. As a consequence of defendant's wrongful actions, intentional, negligent, and reckless behavior, and violations of Federal and New York State laws, plaintiff was physically injured, was subjected to fear, personal humiliation and degradation, and suffered and continues to suffer physical pain and impairment, as well as mental and emotional distress.

89. Plaintiff suffered and continues to suffer irreparable injury and monetary damages, as well as punitive damages, costs and attorneys' fees, and other relief this Court may find just and proper.

## COUNT THREE: VIOLATION OF NEW YORK EXECUTIVE LAW § 296

90. Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

91. The above discriminatory treatment by defendant, its agents, and employees, violates New York State Executive Law § 296.

92. Because of plaintiff's race he has been subjected to abuse and mistreatment as set forth herein and has been treated differently than other employees.

93. As a consequence of defendant's wrongful actions, intentional, negligent, and reckless behavior, and violations of Federal and New York State laws, plaintiff was physically injured, was subjected to fear, personal humiliation and degradation, and suffered and continues to suffer physical pain and impairment, as well as mental and emotional distress.

94. Plaintiff suffered and continues to suffer irreparable injury and monetary damages, as well as punitive damages, costs and attorneys' fees, and other relief this Court may find just and

proper.

## COUNT FOUR: DISCRIMINATION PURSUANT TO NEW YORK CITY HUMAN RIGHTS LAW

95. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

96. By the acts and practices described above defendants, the defendants committed discrimination against plaintiff by discriminating against him on the basis of his race.

97. Further, the defendants did not treat plaintiff the same as similarly situated Caucasian employees in violation of New York City Human Rights Law ("NYCHRL").

98. Upon information and belief, this disparate treatment of plaintiff was motivated by racial animus and/or some other unlawful discrimination.

99. As a result of the foregoing, plaintiff sustained, *inter alia*, loss of liberty, lost wages, physical injuries, mental anguish, shock, fright, apprehension, embarrassment, and humiliation.

## COUNT FIVE: DISCRIMINATION PURSUANT TO NEW YORK STATE HUMAN RIGHTS LAW

100. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

101. By the acts and practices described above defendants, the defendants committed discrimination against plaintiff by discriminating against him on the basis of his race.

102. Further, the defendants did not treat plaintiff the same as similarly situated Caucasian employees in violation of New York State Human Rights Law ("NYSHRL").

103. Upon information and belief, this disparate treatment of plaintiff was motivated by racial animus and/or some other unlawful discrimination.

104. As a result of the foregoing, plaintiff sustained, *inter alia*, loss of liberty, lost

wages, physical injuries, mental anguish, shock, fright, apprehension, embarrassment, and humiliation.

### COUNT SIX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

105. Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

106. Defendants' discriminatory treatment of plaintiff was intentional, reckless, extreme, and outrageous, and caused plaintiff to suffer severe emotional distress.

107. The emotional harm was exacerbated by defendants WRIGHT and JACOBS who threatened, harassed, assaulted, and abused plaintiff.

108. The acts were intentionally directed at plaintiff.

109. The conduct was extreme, outrageous, malicious, and dangerous to the physical, mental, and emotional well-being of plaintiff, beyond the standards of civilized decency, and utterly intolerable in a civilized society.

110. Defendants knew and intended that this conduct would cause severe and extreme emotional harm to plaintiff.

111. As a consequence of defendants' intentional wrongful actions, plaintiff was physically injured, was subjected to fear, personal humiliation, and degradation, and suffered and continues to suffer physical pain and impairment, as well as mental and emotional distress.

112. Plaintiff suffered and continues to suffer irreparable injury and monetary damages, as well as punitive damages, costs and attorneys' fees, and any other relief this Court may find just and proper.

### COUNT SEVEN: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

113. Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding

paragraphs as if set forth fully and at length herein.

114. Defendants had a duty to protect plaintiff, its employee, from emotional and physical harm. Defendants breached this duty and negligently permitted plaintiff to be injured.

115. Plaintiff's emotional harm was exacerbated by defendants WRIGHT and JACOBS who threatened, harassed, assaulted, and abused plaintiff.

116. The conduct was extreme, outrageous, malicious, and dangerous to the physical, mental, and emotional well-being of plaintiff.

117. As a consequence of defendant's wrongful actions, plaintiff was seriously injured, was subjected to fear, personal humiliation, and degradation, and suffered and continues to suffer physical pain and impairment, as well as mental and emotional distress.

118. Plaintiff suffered and continues to suffer irreparable injury and monetary damages, as well as punitive damages, costs and attorneys' fees, and any other relief this Court may find just and proper.

## COUNT EIGHT: ASSAULT

119. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

120. Defendants' WRIGHT and JACOBS's aforementioned actions placed plaintiff in apprehension of imminent harmful and offensive bodily contact.

121. As a result of defendants' conduct, plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## COUNT NINE: BATTERY

122. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

123. Defendant JACOBS touched plaintiff in a harmful and offensive manner.

124. Defendant JACOBS did so without privilege or consent from plaintiff.

125. As a result of defendant JACOBS's conduct, plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## **PRAYER FOR RELIEF**

Plaintiff requests judgment as follows:

a. Back pay and front pay;

b. Compensatory damages;

c. Punitive damages;

d. Attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) and New York State Laws; and

e. An order granting such other legal and equitable relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial for all claims stated herein.


Dated: New York, New York
       December 28, 2020

                                                         _____/s/_____
                                                   GERALD M. COHEN
                                                   ILYSSA S. FUCHS
                                                   COHEN & FITCH LLP
                                                   *Attorneys for Plaintiff*
                                                   110 E. 59th St., Suite 3200
                                                   New York, N.Y. 10022
                                                   (212) 374-9115